**BANK OF COMMERCE,**
**Plaintiff-Appellee,**

v.

**Dean WADDELL, Defendant,**

v.

**CLAYTON HOMES, INC.,**
**Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 12, 1986.

Petition to Appeal Denied by
Supreme Court March 9, 1987.

Thomas N. McAdams of Bernstein, Susano and Stair, Knoxville, for defendant-appellant.

Marshall E. Duggin, Woodbury, for plaintiff-appellee.

MATHERNE, Retired Judge.

The issue is whether, under the facts, a security interest noted on a certificate of title as first lien on a mobile home prevails over a lien created by a subsequent deed of trust which conveyed the realty upon which the mobile home was located. The chancellor held that the mobile home became a part of the realty and that the security interest noted on the certificate of title became unperfected because the holder failed to file a continuation statement as required by Section 47–9–403, Tennessee Code Annotated. Judgment was entered in favor of the holder of the lien secured by the deed of trust. The holder of the security interest noted on the certificate of title appeals.

On February 23, 1977, Jackie G. Prater and wife, Brenda Sue Prater, purchased a 1977 Manchester Mobile Home from Clayton Homes, Inc. (Clayton). Clayton financed a balance of the purchase price under a Retail Installment Contract signed by the Praters. This contract was assigned to Vanderbilt Mortgage & Finance Company (Vanderbilt) with full recourse. On February 28, 1977, Clayton delivered the mobile home to the Praters. On May 6, 1977, Vanderbilt filed its Financing Statement with the Cannon County Register of Deeds. On July 15, 1977, a certificate of title to the mobile home was issued showing Vanderbilt to be the first lienholder.

Thereafter, Jackie Prater and Brenda Prater were divorced, and Brenda Prater married Jerry Basham. On August 21, 1980, Jerry and Brenda Basham borrowed some money from the plaintiff bank and executed a deed of trust conveying the land on which the mobile home was located to secure the loan. On December 18, 1982, Brenda Basham conveyed this same land to Jerry Basham. On December 21, 1982, Jerry Basham borrowed more money from the plaintiff bank and executed a second deed of trust on this same realty to secure the loan.

The original debt to Clayton, assigned to Vanderbilt, became in default, and Vanderbilt re-assigned the retail installment contract to Clayton under the full recourse provisions of the assignment to it. On September 15, 1983, Clayton repossessed the mobile home, made some repairs to it, and sold it.

The bank brings this lawsuit against Clayton and one of its employees alleging that Clayton wrongfully removed the mobile home from the premises thereby greatly reducing the value of the bank's security on the Basham notes. In that Clayton has sold the mobile home, the bank prays for money judgment plus punitive damages and attorney's fee.

A "mobile home" is defined at Section 55–1–105(d), T.C.A., as follows:

(d) The words "mobile home or house trailer" mean any vehicle or conveyance, not self-propelled, deisgned for travel upon the public highways and designed for use as a residence, office, apartment, storehouse, warehouse or any other similar purpose.

Under the Motor Vehicle Title and Registration Law the words "motor vehicle" shall also mean any mobile home or house trailer as defined under Section 55–1–105(d). See Section 55–1–103(b).

When the Praters purchased this Manchester mobile home from Clayton, it was on wheels which were attached to axles. The mobile home was 24 feet by 55 feet in size and capable of being used for any of the purposes mentioned in Section 55–1–105(d), T.C.A. It was not self-propelled, and required an outside source of power for movement. At that time, February 23, 1977, when the Praters signed the retail installment contract, which gave to the seller Clayton a security interest in the mobile home, the vehicle met every requirement of the definition of a mobile home, and was subject to the registration and certificate of title provisions of the Motor Vehicle Title and Registration Law. Sections 55–1–103(b) and 55–1–105(d), T.C.A.

Except for liens dependent upon possession and the lien of the state for taxes, the *exclusive method of perfecting a security*

*interest* in a mobile home is by notation of the lien on the certificate of title. Section 55–3–126(b), T.C.A. The filing and notation of a lien upon the certificate of title is *constructive notice to creditors of the owner,* subsequent purchasers and encumbrances except such liens as may be dependent upon possession. Section 55–3–126(a), T.C.A.

The bank relies heavily upon the case of *Associate Capital Corp. v. Cookeville Pro. Credit Assoc.,* (Tenn.App.1978) 569 S.W.2d 474. In that case Gaw and Adams purchased a 60–acre tract of land on which was located a 1971 Capella mobile home. The purchasers executed a deed of trust conveying the land to secure a note to the Production Credit Association. Later, one of the purchasers, Gaw, borrowed money from Associates Capital and executed a security agreement which gave the lender a security interest in the 1971 Capella mobile home. The Associates Capital security interest was duly noted on the certificate of title to the mobile home and remained the only lien noted thereon. Upon default, Associates Capital took possession of the mobile home under its security interest therein. The court found that the 1971 Capella mobile home had become a fixture, and was a fixture at the time the deed of trust was executed to Production Credit. The mobile home was, therefore, subject to the lien under the deed of trust the same as the land upon which it was located. The mobile home having become a fixture, it did not meet the definition of a mobile home as set out at Section 55–1–105(d), T.C.A. Therefore, the Motor Vehicle Title and Registration Law did not apply to this fixture, and the holder of the deed of trust prevailed.

The case at bar differs wherein here the security interest attached when the Praters executed the retail installment contract to purchase the mobile home, and that security interest became perfected by being duly noted on the certificate of title long before the bank took its deeds of trust on the land on which it was located. In the present case we need not decide if the mobile home became a fixture—it was a mobile home

when the lien attached and the method of perfecting that security interest is as set out in the Motor Vehicle Title and Registration Law.

As noted, Vanderbilt filed a financing statement in the Register's Office of Cannon County. There was no continuation statement filed as required by Section 47–9–403(2), T.C.A., and the bank insists that Vanderbilt thereby lost its security interest in the mobile home.

That argument overlooks Section 47–9–302(3)(b), T.C.A., which specifically provides that no financing statement is required for a security interest in personal property, if other statutes require indication on a certificate of title of such security interest in that property. This mobile home, at the time the security interest in Clayton attached, was clearly subject to Sections 55–1–101, et seq., the Tennessee Motor Vehicle Title and Registration Law. Therefore, notation of the lien on the certificate of title was the proper method of perfecting the lien. The financing statement filed in this instance was surplusage, that filing did not perfect the lien, and the failure to file a continuation statement did not in any way affect the perfected lien shown by notation on the certificate of title.

We, therefore, hold that Clayton enforced a valid lien against the mobile home, and the bank has no claim against it. The decree of the chancellor is reversed, and this lawsuit is dismissed. The costs in the trial court and in this Court are adjudged against the plaintiff-appellee for which execution may issue, if necessary.

CANTRELL and LEWIS, JJ., concur.