In re Patricia A. CASSADY, Debtor.

N. David ROBERTS, Jr.,
Trustee, Plaintiff,

v.

GREEN TREE FINANCIAL
CORP., Defendant.

Bankruptcy No. 94–32566.
Adv. No. 96–3002.

United States Bankruptcy Court,
E.D. Tennessee.

June 27, 1996.

Bailey, Roberts & Bailey, PLLC, Linda V. Bailey, N. David Roberts, Jr., Knoxville, Tennessee, for Plaintiff.

Steltemeier & Westbrook, Joel E. Jordan, Nashville, Tennessee, for Defendant.

## MEMORANDUM ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

RICHARD S. STAIR, Jr., Chief Judge.

The court has before it cross-motions for summary judgment filed by the Plaintiff and Defendant on May 22, 1996. Pursuant to Local Bankr.R. 9(c), each party filed a response in opposition to the other party's motion on June 10, 1996. The motions and responses are supported by documents[1] and affidavits executed by the Trustee, N. David Roberts, Jr., the debtor, Patricia A. Cassady, and Steve Cox, president of Cox Mobile Homes, Inc.

The Plaintiff, by his Complaint filed January 11, 1996, seeks a determination that the Defendant's lien in a 1994 Cavalier mobile home purchased by the debtor on April 20, 1994, was unperfected at the time the debtor commenced her bankruptcy case and that he is entitled to avoid the lien pursuant to 11 U.S.C.A. § 544(a)(1) (West 1993). Alternatively, the Plaintiff seeks to avoid the Defendant's lien as a preference pursuant to 11 U.S.C.A. § 547(b) (West 1993). Under either theory, the Plaintiff, upon avoidance of the lien, seeks to recover the mobile home for the benefit of the estate pursuant to 11 U.S.C.A. § 550(a)(1) (West 1993).

■■■ Pursuant to Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding through Fed.R.Bankr.P. 7056, summary judgment is available only when a party is entitled to a judgment as a matter of law and when, after consideration of the evidence presented by the pleadings, affidavits, answers to interrogatories, and depositions in a light most favorable to the nonmoving party, there remain no genuine issues of material fact. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The factual dispute must be genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989).

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(F), (K) (West 1993).

### I

The facts giving rise to the Trustee's Complaint are essentially undisputed. It is the legal consequences arising from those facts that the court is called upon to resolve.

---

1. As neither party has objected to their admissibility, all relevant documents will be considered by the court notwithstanding that several of the documents are otherwise inadmissible for summary judgment purposes under Fed.R.Civ.P. 56, incorporated into Fed.R.Bankr.P. 7056. *See Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 89 (6th Cir.1993) (Failure to object to a document improperly filed under Rule 56 constitutes a waiver of the objection.).

On April 20, 1994, the debtor purchased a 1994 Cavalier mobile home from Cox Mobile Homes, Inc., a mobile home dealer, under the terms of a Manufactured Home Retail Installment Contract and Security Agreement (Contract). The Contract, under which the debtor granted Cox Mobile Homes, Inc. a security interest in the mobile home, was assigned to the Defendant.

On the date the debtor purchased the mobile home, April 20, 1994, its wheels and axles were attached. The mobile home, however, remained on Cox Mobile Home, Inc.'s lot until May 24, 1994, when it was delivered to the debtor. At the time of delivery, the mobile home was placed on a lot owned by the debtor and the wheels were removed; it was placed on blocks; a septic tank hookup, water, and electricity were connected; it was underpinned; and an outside heat pump providing central heat and air conditioning was installed. The parties do not dispute that on May 24, 1994, the mobile home became affixed to the debtor's realty.

On June 23, 1994, the Defendant filed an Application for Certificate of Title and Registration with the County Court Clerk of Knox County, Tennessee, containing its name and address as the holder of a security interest or lien in the mobile home. On July 27, 1994, the State of Tennessee issued a Certificate of Title to the mobile home listing the debtor as the owner and the Defendant as the first lienholder. The Certificate of Title states April 20, 1994, as the "Date of First Security Interest."

The debtor commenced her bankruptcy case on October 13, 1994, by filing a Voluntary Petition under Chapter 13. On August 8, 1995, the debtor converted her Chapter 13 case to Chapter 7.

## II

The Trustee grounds his Complaint on alternative theories. First, relying on the "strong-arm clause" of the Bankruptcy Code, § 544(a),[2] the Trustee contends that the estate's interest in the mobile home is superior to the Defendant's interest because the mobile home became a fixture, thus requiring perfection of the Defendant's security interest by registration of a deed of trust or financing statement with the Knox County Register of Deeds.[3] Alternatively, the Trustee contends that if perfection of the Defendant's lien was required under the Tennessee Motor Vehicle Title and Registration Law, the date of perfection was the date of issuance of the Certificate of Title, July 27, 1994, a date within the § 547(b) ninety-day preference period.[4]

2. Bankruptcy Code § 544 provides in material part:
> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a

bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C.A. § 544 (West 1993).

3. Because the Certificate of Title lists the debtor's address as Knoxville, Tennessee, the court presumes the mobile home is situated on land that lies in Knox County. If not, the deed of trust and/or financing statement would require registration in some other county. Tenn.Code Ann. §§ 47–9–409 (1992), 66–24–101 (Supp.1995), and 66–24–103 (1993).

4. It is undisputed that the timing requirement under 11 U.S.C.A. § 547(c)(3)(B) (West 1993) in effect prior to the October 22, 1994 effective date of the Bankruptcy Reform Act of 1994, requiring, for purposes of § 547(b), that a purchase money security interest be perfected within ten days after the debtor receives possession of the property if the perfection is to relate back to the date of transfer, has no application in this adversary proceeding to the perfection of the Defendant's lien.

The Defendant contends that perfection of its security interest in the mobile home was at all times governed by the Tennessee Motor Vehicle Title and Registration Law and that its security interest was perfected on June 23, 1994, the date the Application for Certificate of Title and Registration was filed with the County Court Clerk of Knox County, a date more than ninety days preceding the filing of the debtor's bankruptcy petition on October 13, 1994.

## III

■ It is undisputed from the record before the court that the 1994 Cavalier mobile home purchased by the debtor on April 20, 1994, was, when acquired, a mobile home within the definition of Tenn.Code Ann. § 55–1–105 (1993).[5] As such, it was a "motor vehicle" under the Tennessee Motor Vehicle Title and Registration Law.[6] Except for liens dependent upon possession and a lien of the state for taxes, the exclusive method of perfecting a security interest in a mobile home is by notation of the lien on the certificate of title. Tenn.Code Ann. §§ 55–3–125, 55–3–126 (1993); *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 442 (Tenn.Ct.App. 1994) ("[C]ompliance with [the perfection requirements of the Tennessee Motor Vehicle Title and Registration Law] ... is the exclusive method for perfecting a security interest in [motor vehicles] not part of inventory.").

### A. Plaintiff's Avoidance Action Under § 544(a)

■ The Plaintiff contends that the mobile home became a fixture thus requiring the Defendant to perfect its security interest in the manner required under Tennessee law for perfecting liens and mortgages against real estate, i.e., by filing a deed of trust or financing statement in the Office of the Register of Deeds for Knox County, Tennessee.

In support of his argument, the Plaintiff relies on the case of *Associates Capital Corp. v. Cookeville Production Credit Ass'n*, 569 S.W.2d 474 (Tenn.Ct.App.), *cert. denied* (Tenn.1978). In that case, the purchasers owned a sixty-acre tract of land on which was located a 1971 Capella mobile home. The mobile home's wheels had been removed and it had been affixed to the realty. The purchasers conveyed the land to Production Credit by way of a deed of trust to secure a note. Later, one of the purchasers executed a security agreement to secure a loan from Associates Capital which gave the lender a security interest in the 1971 Capella mobile home. Associates Capital noted its security interest on the certificate of title and later, upon default, took possession of the mobile home. The court found that the mobile home was a fixture at the time the deed of trust was executed to Production Credit and that the mobile home, having become a fixture, did not meet the definition of a mobile home as set out at Tenn.Code Ann. § 59–105(d) (now section 55–1–105(a)). Therefore, the mobile home and the land upon which it was located were subject to Production Credit's lien under the deed of trust.

*Cookeville Production Credit Ass'n* has, however, been clarified by the Tennessee Court of Appeals in *Bank of Commerce v. Waddell*, 731 S.W.2d 61 (Tenn.Ct.App.1986), *petition to appeal denied* (Tenn.1987). In *Waddell*, Vanderbilt Mortgage & Finance Company (Vanderbilt) financed the purchasers' February 23, 1977 acquisition of a 1977 Manchester mobile home from Clayton Homes, Inc. (Clayton). At the time of its purchase, the mobile home was subject to the Tennessee Motor Vehicle Title and Registration Law. On February 28, 1977, the mobile home was delivered to the purchasers and affixed to the purchasers' realty. On May 6, 1977, Vanderbilt filed a financing statement with the Cannon County Register of Deeds and on July 15, 1977, the state issued a

---

**5.** Tennessee Code Ann. § 55–1–105 (1993) provides in material part:

(a) "Mobile home or house trailer" means any vehicle or conveyance, not self-propelled, designed for travel upon the public highways, and designed for use as a residence, office, apartment, storehouse, warehouse, or any other similar purpose.

**6.** Tennessee Code Ann. § 55–1–103 (1993) provides in material part:

(d) ... "Motor vehicle" means any mobile home or house trailer as defined in § 55–1–105.

certificate of title to the mobile home listing Vanderbilt as the first lienholder.

On August 21, 1980, and December 18, 1982, first and second deeds of trust, conveying the land on which the mobile home was affixed, were executed to secure loans from the Bank of Commerce. On September 15, 1983, Clayton, having reacquired the retail installment contract originally assigned to Vanderbilt, repossessed the mobile home and sold it. Bank of Commerce sued Clayton alleging wrongful removal of the mobile home from the premises.

The Court of Appeals held that Vanderbilt's security interest noted on the certificate of title prevailed over Bank of Commerce's lien created by its subsequent deed of trust. In reaching its decision, the court stated:

> [At the time the mobile home was acquired,] February 23, 1977, when the [purchasers] signed the retail installment contract, which gave to the seller Clayton a security interest in the mobile home, the vehicle met every requirement of the definition of a mobile home, and was subject to the registration and certificate of title provisions of the Motor Vehicle Title and Registration Law.

*Waddell,* 731 S.W.2d at 62.

In distinguishing the case before it from the *Cookeville Production Credit Ass'n* case, the court stated:

> The case at bar differs [from *Cookeville Production Credit Ass'n* ] wherein here the security interest attached when the [Purchasers] executed the retail installment contract to purchase the mobile home, and that security interest became perfected by being duly noted on the certificate of title long before the bank took its deeds of trust on the land on which it

was located. In the present case, we need not decide if the mobile home became a fixture—it was a mobile home when the lien attached and the method of perfecting that security interest is as set out in the Motor Vehicle Title and Registration Law.[7]

. . . .

> ... This mobile home, at the time the security interest in Clayton attached, was clearly subject to Sections 55–1–101 et seq., the Tennessee Motor Vehicle Title and Registration Law. Therefore, notation of the lien on the certificate of title was the proper method of perfecting the lien.

*Id.* at 62–63.

The court construes *Waddell* to hold that it is the character of the mobile home at the time the security interest attaches that determines the required method of perfection. The manner of perfection does not thereafter change notwithstanding that the mobile home may later become affixed to real estate.[8] The logic is sound as a mobile home may be affixed at any time after purchase not only to a purchaser's real estate but also to non-owned real estate such as a mobile home park. Furthermore, the location of a mobile home is sometimes subject to frequent change thus making it difficult if not impossible for a lender to register a deed of trust or record a financing statement in the appropriate county. Conversely, if the mobile home is affixed to the realty at the time a loan is made, it has forever lost its character as a "motor vehicle" to the lender whose security interest was properly perfected by recordation of a deed of trust or financing statement in the Office of the Register of Deeds in the county where the land lies.

---

7. The financing statement filed by Vanderbilt with the Register of Deeds on July 15, 1977, had apparently expired upon Vanderbilt's failure to file a continuation statement. 731 S.W.2d at 63. The court nonetheless stated that "[t]he financing statement ... was surplusage, that filing [of the financing statement] did not perfect the lien, and the failure to file a continuation statement did not in any way affect the perfected lien shown by notation on the certificate of title." *Id.*

8. The court is not called upon nor does it purport to address the priorities issue that may arise if perfection is required under the Tennessee Motor Vehicle Title and Registration Law by notation of the mobile home's lien on the certificate of title and perfection is delayed beyond the twenty-day relation back period fixed by Tenn.Code Ann. § 55–3–137(b)(2) (1993) until after the mobile home has become affixed to the realty and a validly perfected deed of trust or financing statement has intervened.

The facts in the present case are similar to those in *Waddell*. The debtor purchased the 1994 Cavalier mobile home on April 20, 1994, at which time the Defendant's security interest attached.[9] At the time of its purchase, perfection of the Defendant's lien was subject to the requirements of the Tennessee Motor Vehicle Title and Registration Law. It was on May 24, 1994, more than thirty days after the debtor purchased the mobile home, that it became affixed to the realty.

Based upon *Waddell*, the court finds that the Defendant properly perfected its security interest in the debtor's 1994 Cavalier mobile home by notation of its lien on the Certificate of Title issued July 27, 1994. As the Defendant's lien was perfected prior to commencement of the debtor's bankruptcy case on October 13, 1994, the Plaintiff cannot prevail under § 544(a).

### B. Plaintiff's Avoidance Action Under § 547(b)

■ As an alternative theory, the Plaintiff contends that the Defendant perfected its lien on July 27, 1994, the date of issuance of the Certificate of Title to the 1994 Cavalier mobile home, and that the lien is therefore subject to avoidance as a preferential transfer under § 547(b).[10] The Trustee cannot prevail under this theory.

Tennessee Code Ann. § 55-3-137(b)(1) (1993) provides in material part:

> **Perfection of lien or security interest— Procedure—Notice.**—(a) A lien or security interest in a vehicle of the type for which a certificate is required shall be perfected and shall be valid against subsequent creditors of the owner, subsequent

transferees, and the holders of security interests and liens on the vehicle by compliance with this chapter.

> (b)(1) A security interest or lien is perfected by delivery to the county clerk of the existing certificate of title, if any, and an application for a certificate of title containing the name and address of the holder of a security interest or lien and the required fee.

■ As previously noted, Tenn.Code Ann. §§ 55-3-125 and 55-3-126 provide that the exclusive method of perfecting a security interest in a motor vehicle, including a mobile home as defined in Tenn.Code Ann. § 55-1-105, is by notation of the lien on the certificate of title. There is, therefore, an apparent conflict with Tenn.Code Ann. § 55-3-137, which provides for perfection upon delivery of the application for certificate of title containing the name and address of the secured party to the county court clerk.

The conflict, however, was resolved by the Tennessee Supreme Court in *Still v. First Tennessee Bank*, 900 S.W.2d 282 (Tenn.1995). In that case, the United States District Court for the Eastern District of Tennessee, Southern Division, certified two questions of law to the Tennessee Supreme Court pursuant to Tenn.S.Ct.R. 23. The questions were:

> 1. Does Tenn.Code Ann. § 55-3-137 implicitly repeal all or part of Tenn.Code Ann. § 55-3-126, to the effect that a creditor may now perfect a security interest in a motor vehicle by merely delivering to the appropriate government official the existing certificate of title, if any; an application for certifi-

---

**9.** In Tennessee, the attachment of security interests is governed by Tenn.Code Ann. § 47-9-203(1) (Supp.1995), which provides in material part:

> (1) ... [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
>   (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; and
>   (b) the value has been given; and
>   (c) the debtor has rights in the collateral.

In the present case, all steps had been taken on April 20, 1994, essential to attachment of the Defendant's security interest. *See Weaver v. Ford Motor Credit Co. (In re McFarland)*, 131 B.R. 627 (E.D.Tenn.1990), *aff'd*, 943 F.2d 52 (6th Cir. 1991).

**10.** As material to this adversary proceeding, § 547(b) provides in material part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
>   ....
>   (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; ....

11 U.S.C.A. § 547(b) (West 1993).

cate of title containing the name and address of the holder of security interest or lien; and the required fee; and

2. If and only if question (1) is answered in the affirmative, to which county clerk, if any, is such delivery to be made under Tenn.Code Ann. § 55–3–137.

*Still,* 900 S.W.2d at 282–83.

The court found that resolution of the first question made it unnecessary to answer the second question. In determining that Tennessee is still a notation state, the court concluded that

a security interest in a motor vehicle is not perfected until a notation of the lien is made on the certificate of title. When such notation is made, the date of perfection dates from the time of delivery to the county clerk.

*Id.* at 285.

■ In sum, notation of a secured party's lien on the certificate of title in Tennessee relates back to the date the title was applied for in the office of the county court clerk. In the matter presently before the court, the Defendant filed an Application for Certificate of Title and Registration with the County Court Clerk of Knox County on June 23, 1994, containing its name and address as the holder of a security interest in the 1994 Cavalier mobile home. The Certificate of Title was issued on July 27, 1994, with the Defendant noted as the first lienholder. Accordingly, perfection of the Defendant's lien related back to June 23, 1994, a date more than ninety days prior to the October 13, 1994 commencement of the debtor's bankruptcy case. The Plaintiff cannot prevail under § 547(b).

For the reasons stated herein, the Plaintiff's Motion for Summary Judgment will be denied and the Defendant's Motion for Summary Judgment will be granted. The Plaintiff's Complaint will be dismissed. An appropriate order will be entered.