DUDZICK *et al. v.* LEWIS *et al.*

(*Knoxville,* September Term, 1939.)

Opinion filed November 25, 1939.

S. E. N. Moore, of Knoxville, and P. H. Mendel, of Clinton, for appellants.

Ben F. Alexander and Homer H. Wallace, both of Clinton, for appellees.

Mr. Special Justice W. T. Kennerly delivered the opinion of the Court.

The parties will be referred to in the characters they occupied in the Chancery Court. The defendants Lewis and wife in 1933 leased one acre of ground on U. S. Highway No. 25 about two miles south of Clinton, for the purpose of constructing and operating a tourist camp thereon. In connection with the camp they were to operate a filling station. The property was then owned by Mrs. Blanche Fletcher. The lease ran for a term of five years. The monthly rental varied from $12 per month during the first year to $20 per month during the fifth year. The lease provided that the lessee, "agrees to construct on said lot one cabin within thirty days from this date and agrees also to improve present buildings at lessee's expense." Shortly after defendants occupied the premises they constructed six tourist cabins, one of them being of logs and the others framed. One

cabin had two rooms in it and was equipped with water connections, shower bath, etc., water being supplied from the South Clinton main. All cabins were equipped with a flue and stove for heating purposes. This lease was never recorded.

Mrs. Fletcher sold the property to Mrs. Sullivan, and the latter sold it to the complainants.

Shortly before the lease expired, the defendants acquired title to another tract of land just across the road from the leased premises, and without the knowledge or consent of the complainants, who then resided in Michigan, removed five of these cabins to the lot which they had purchased. They also removed a shed which they had constructed as a part of the filling station. The filling station was on the leased premises when the lease was made. Defendants used a truck to drag these cabins from one lot to the other.

When complainants received knowledge of this removal, they instituted this suit in the Chancery Court seeking to compel defendants by mandatory injunction to replace said cabins and shed upon their lot. It is shown that defendants are insolvent. Instead of an appeal bond, they have filed a pauper oath.

The Chancellor heard the case upon oral testimony and entered a decree granting the relief prayed. Defendants prayed, were granted and perfected their appeal to the Court of Appeals. The evidence was preserved by bill of exceptions. The latter court affirmed the decree of the Chancellor. Defendants have filed a petition for *certiorari* and *supersedeas*. Errors have been assigned. The only errors assigned which require detailed consideration are those raising the question whether these tourist cabins and the shed were part of the freehold or

were chattels belonging to the lessees which they could remove at their pleasure.

The proof shows that all of these cabins removed except the double cabin were about eight feet by ten feet, were framed, unceiled, and their foundations consisted of loose brick or wooden pillar supports. The defendants insist these cabins were trade fixtures, removable by them at any time they so desired. We think this position is unsound, as was held by the two lower courts.

There is no evidence in the record showing there was any prevailing usage or custom in the section where this tourist camp was located applicable to the removal of such buildings from leased premises by a lessee.

■ It is now the generally recognized rule that the manner of annexing chattels to realty is not the controlling consideration in determining whether or not the chattels become a part of the realty. The question of the intention of the parties to a lease is generally held to be controlling in determining in doubtful cases whether or not a chattel annexed to realty becomes a part thereof and the property of the lessor.

Considering the lease in question, there can be no doubt it was the intention of the lessor, Mrs. Fletcher, that the improvements placed by the lessees upon these premises should become a part of the freehold. The lease required the lessees to construct one cabin on the premises within thirty days, and specified that the premises were to be used in operating a filling station, restaurant, store, dwelling and tourist camp. The fact that the lease required that one cabin should be erected within thirty days evidenced the interest of the lessor in having her property improved by buildings that would become a part of the freehold, and which would revert to her at the termination of the lease.

The operation of a tourist camp is a business of very modern origin. Tens of thousands of these camps are operated throughout the country. They are used chiefly to afford over-night accommodations to tourists traveling in motor cars. The small cabins erected at these camps are not such chattels as machinery, ornaments, etc., erected or installed in factory and store buildings. They have their foundations upon the ground and are permanent in character.

The only reported case decided by this Court that we can find which is analogous is *Childress* v. *Wright*, 42 Tenn. (2 Cold.), 350. The building involved in that case was a small frame shack of value about $45. During the Civil War, when the Federal soldiers were occupying Nashville, a regiment camped upon the defendant's land. A sutler attached to this regiment erected a small building for use in conducting his business. A Civil War sutler was a small merchant who by permission of the military authorities accompanied troops in the field and carried a stock of goods in the nature of confections, cigars, tobacco, etc. He was not a soldier, but was a civilian camp follower.

When the regiment to which the sutler was attached left Nashville, he sold the building to the plaintiff Childress for $45. The defendant, the owner of the land, demolished the building and appropriated the lumber used in its construction. Childress sued for conversion of the lumber claimed to be owned by him. This Court held that this small temporary shack, as soon as it was erected, although erected solely for a temporary business use, became a part of the freehold, the property of the owner of the land. This language was used: "The house . . . so far as the record discloses the facts, was erected without the permission of the owner of the

freehold, . . . and when once erected, and attached to the freehold, it passed under the right of the soil, and could not be sold and transferred by the sutler, who erected it." *Childress* v. *Wright*, 42 Tenn. (2 Cold.), 350, 352.

■ "As a general rule a building on land is part of the realty and is covered by a mortgage on the land or goes with a conveyance thereof. Consequently a building erected by one not the owner of the land, without any agreement that it shall remain personal property, belongs to such owner." 11 R. C. L., 1081.

When the complainants purchased this property, it was being used as a tourist camp, and these cabins and the shed aforesaid were then attached to the freehold. The purchase was for the purpose of operating a tourist camp. They had no knowledge of the terms of the lease, as it was not registered. They had no knowledge that defendants claimed ownership of these buildings. In fact, so far as the record discloses, defendants never made such claim until after complainants purchased.

■ ■ Another rule adhered to by the courts in deciding questions of this character is whether the removal of buildings or any chattels attached to the land would cause substantial damage to the freehold. If it would, they cannot be removed. There can be no doubt that the removal of these five cabins and the shed caused substantial damage to the freehold and greatly reduced its value. In fact, by their removal the tourist camp was destroyed, only one cabin being left.

In *Knoxville Gas Company* v. *W. I. Kirby & Sons*, 161 Tenn., 490, 496, 32 S. W. (2d), 1054, 1055, this Court announced the applicable rule as follows:

"Modern authorities all agree that the most controlling test of the question whether property connected with

real estate is to be deemed realty or a mere chattel, removable at the pleasure of the owner, is the intention and purpose of the erection. . . . But the intent and the nature of the property, taken as a whole, as the parties purchased it and treated it, concurred in making it a part of the freehold, and stamped it as realty, and it must so be held.''

The above quotation first appeared in the case of *Johnson* v. *Patterson*, 81 Tenn. (13 Lea), 626, which involved the title to some loose machinery installed in a cotton factory.

In the *Kirby case*, the chattels involved were gas stoves in an apartment house which were attached to the building by the pipes supplying gas. It was held that while they were essential chattels for the operation of an apartment house where housekeeping was conducted, they nevertheless became a part of the building when installed therein. The Gas Company had retained title to these stoves, but had not taken a chattel mortgage thereon, nor had it registered its contract retaining title. Kirby purchased the apartment house in ignorance of the unpaid indebtedness of his vendor to the Gas Company. This Court held that when Kirby purchased the building he became the unconditional owner of these fixtures.

If defendants desired or contemplated retaining the right to remove these small cabins from the premises at the termination of their lease, they should have so contracted in the lease. It is worthy of note that the shed attached to the filling station which was removed by defendants had unquestionably become a part of that building.

All assignments of error have been considered, and none of them are sound. Writ denied.