ASSOCIATES CAPITAL CORPORATION
(H. Marshall Judd, Intervenor),
Plaintiff-Appellant,

v.

COOKEVILLE PRODUCTION CREDIT
ASSOCIATION, Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

May 5, 1978.

Certiorari Denied by Supreme Court
Aug. 8, 1978.

Neal & Ledbetter, H. Marshall Judd, Cookeville, for plaintiff-appellant.

Donald G. Dickerson, Cookeville, for defendant-appellee.

OPINION

DROWOTA, Judge.

The issue in this case is whether a 12′ × 65′ "mobile home" that has had its wheels removed and has been affixed to realty is subject to the certificate of title provisions for motor vehicles under chapters 1 and 3 of Title 59 of Tennessee Code Annotated. If so, the security interest of plaintiff Associates Capital, which was noted on a certificate of title to the home, was perfected in accordance with those provisions and takes priority over defendant Cookeville Production Credit's real estate mortgage, which was not noted on the certificate. If Title 59 is not applicable, on the other hand, priority must be given to defendant's realty mortgage, which was created by a deed of trust properly recorded in accordance with state mortgage law and with the U.C.C. provisions on fixtures.

In October of 1973, Carlos Gaw and DeWayne Adams bought a tract of land consisting of about 60 acres in Jackson County. On the property was located, in addition to a house, a 1971 Capella mobile home. This home, which had been placed on the property by the previous owner in 1971, was 65 feet long and 12 feet wide. Its condition and connection to the realty on which it was located are described in more detail below.

To secure a purchase-money loan of $51,-286.00 on the property, Gaw and Adams executed a deed of trust to L. H. Williams, secretary-treasurer of defendant Cookeville Production Credit Association. The deed, executed on October 19, 1973, conveys the realty "together with all buildings and improvements thereon or hereafter erected thereon and all rights and appurtenances thereto belonging . . . ." The deed of trust was recorded in the Jackson County Register's Office on October 23, 1973.

Subsequently, Gaw borrowed $5,256.00 from plaintiff Associates Capital Corporation. This debt is evidenced by a note dated April 12, 1974, and signed by Gaw and his wife. In a security agreement of the same date, the Gaws granted associates Capital a security interest in the 1971 Capella home to secure payment of the note. The security agreement contains the Gaws' warranty that the collateral is free of "all security interests, liens and encumbrances," and does not mention any interest of Adams in the property. Associates Capital entered its name as "1st lienholder" on a motor vehicle certificate of title that was certified by the Commissioner of the Department of Revenue on May 31, 1974. The certificate describes the Capella home and lists Carlos Gaw as the owner. Plaintiff Associates retained the certificate, and no other liens have been noted on it.

The instant suit was brought in Jackson County Chancery Court by plaintiff Associates on December 18, 1975. Plaintiff alleged that defendant had taken unlawful possession of the Capella home, and asked the court to decree its entitlement to possession and a reasonable rent for the period during which defendant had maintained possession. In its answer, filed March 26, 1976, defendant admitted that it had taken possession of the home on November 26, 1975, but asserted that this had been lawfully done pursuant to the deed of trust.

Defendant also asserted that the property subject to the deed of trust, which included the Capella home as a fixture to the realty, had been deeded to it by the trustee after a foreclosure sale, and that defendant was the owner of the home. Defendant contended that its lien and ownership were superior to plaintiff's claim against the home.

At the brief trial, an employee of plaintiff Associates testified that there was a balance of $1,168.00 due on its note, on which the Gaws defaulted in December of 1975. He stated that prior to default, plaintiff had no indication either of defendant's claim against the Capella home or that DeWayne Adams had any interest in the property.

Testimony was also given by Jim Jackson, the man who had sold the property to Gaw and Adams. He said that he had put the 65' by 12' Capella home on the property in 1971. He had attached metal "underpinning," which runs from the bottom of the home to the ground and is designed both to improve the appearance of the home and to keep the weather from the pipes and other attachments underneath it. He had also built concrete steps up to the front door of the home. The steps were placed on a concrete slab or apron in front of the home. Jackson had connected the home to electricity, and had erected next to it a small "block building" for the well and pump and for storage. He had also connected the home to a water supply and to a septic tank, which he had had installed to dispose of sewage. Jackson had also equipped the home with a central air conditioning system, connected to a small "pump house" outside. Numerous slides were introduced to document the appearance of the home and its attachments as Jackson described them. Finally, Jackson explained that the home had had wheels and axles when it was brought to the property and installed, but that he had removed these after installation and had given them to the workmen who connected the septic tank. Jackson testified that, when he bought and installed the Capella home, it was his intention to live in it as a home. He also stated that he thought he had given Gaw a certificate of title to the home when he sold the property to him.

Gaw himself testified briefly about the loan transactions. He said that he had considered the Capella home, which was resting on blocks with the underpinning around it when he bought the property, as part of the collateral conveyed by the deed of trust at the time of the deed's execution. Two employees of defendant, one of whom examined the property three months after execution of the trust deed while the other saw it at the time of the foreclosure sale, testified that the home was attached and that it was considered part of the realty.

The Chancellor, after hearing the evidence and allowing the parties to file briefs, rendered his decree on June 9, 1977. He found that the Capella mobile home had been a fixture to the realty when the deed of trust was executed. He also found that the home was subject to the deed of trust. Considering that defendant's lien on the home was superior to plaintiff's, he concluded that defendant owned the home through its purchase at the foreclosure sale and dismissed the case.

Plaintiff Associates appealed. On June 30, 1977, pursuant to a motion, the trial court entered an order allowing H. Marshall Judd, trustee in bankruptcy for the Gaws, to intervene as a party plaintiff. Apparently the debt to Associates had been satisfied in the bankruptcy proceeding, and the trustee is now asserting the rights of Associates under the security interest in the Capella home. The trustee is the only party plaintiff who has filed a brief and prosecuted its appeal in this Court.

The trustee's position on appeal is that the Capella home was subject to the certificate of title provisions of chapters 1 and 3 of Title 59 of the Code when the deed of trust to defendant was executed. Thus, the argument proceeds, T.C.A. § 59–327 provides that notation on the certificate of title is the only way to perfect a lien on the home, and the U.C.C. expressly defers to Title 59 in this regard in § 47–9–302(3)(b) &

(4). Since defendant recorded its deed of trust in the proper place for recording liens against realty but did not note its interest on the certificate of title, the trustee argues that defendant did not properly perfect its lien against the home. He also argues that, since Associates did note its lien on the home's certificate of title in accordance with Title 59, its lien on the home was properly perfected and takes priority over defendant's.

Defendant, of course, argues that the home is not subject to the certificate of title law. Defendant contends that its lien against the home, a fixture, was perfected under § 47–9–401(1)(b) by filing the deed of trust in the proper place for filing a mortgage on the realty, the Jackson County Register's Office. Under defendant's theory, defendant's lien on the home would have priority over Associates' both as a prior interest in the realty under § 47–9–313(3) and because Associates never perfected its interest by filing in the proper place for filing a realty mortgage.

It is obvious from even a cursory examination of these two lines of argument that one issue is central to this case: Was the Capella mobile home subject to the certificate of title provisions of chapters 1 and 3 of Title 59 of the Code? We conclude that it was not, and affirm the Chancellor's dismissal of the case.

T.C.A. § 59–103(b) includes in its definition of a "motor vehicle" the term "mobile home or house trailer," as that term is defined in § 59–105(d):

> (d) The words "mobile home or house trailer" mean any vehicle or conveyance, not self propelled, designed for travel upon the public highways, and designed for use as a residence, office, apartment, storehouse, warehouse, or any other similar purpose.

These definitions apply to chapters 1–6 of Title 59. Section 59–301 subjects motor vehicles "driven or moved upon a highway, and every mobile home or house trailer when occupied" to the registration and certificate of title provisions of chapters 1–6. Sections 59–324 and 59–325 provide for liens on vehicles subject to chapters 1–6 to be noted on the certificate of title, while § 59–327(a) makes such notation constructive notice of all liens, except those dependent on possession, to creditors and subsequent purchasers and encumbrancers. Section 59–326 provides that no lien or encumbrance on a registered vehicle, other than one dependent upon possession,

> shall be valid against the creditors of an owner or subsequent purchasers or encumbrancers until the requirements of this section and § 59–327 have been complied with, unless such creditor, purchaser, or encumbrancer has actual notice of the prior lien.

In § 59–327(b), the method of certifying by noting on the certificate of title a lien on a "motor vehicle, mobile home, house trailer or other mobile structure, whether or not taxed as real property," subject to chapters 1–6 of Title 59 is made "exclusive except as to liens depending upon possession."

We conclude that the above described provisions of Title 59 did not apply to the Capella home at the time the deed of trust to defendant was executed and recorded, because the home did not qualify at that time as a "mobile home" under the definition given in § 59–105(d). In October of 1973, the home in the instant case was not "designed for travel upon the public highways," nor was it so designed when Gaw and Associates executed their security agreement on April 12, 1974. The quoted phrase necessarily implies that a "mobile home" under the statute is either one that is in a condition to act as a conveyance over the public highways or one that may, with a relatively reasonable amount of effort, be reconverted into such a condition. The Capella home in the instant case does not meet that description.

Our decision that the Capella home was not "designed for travel upon the public highways" in October of 1973 and April of 1974 is the product of several factors, no one of which is conclusive in and of itself. First, the Chancellor found that the home was legally a fixture to the realty, a finding supported by the evidence and by the au-

thority defining fixtures in Tennessee. See *Dudzick v. Lewis,* 175 Tenn. 246, 133 S.W.2d 496 (1939); *Fuson v. Whitaker,* 28 Tenn. App. 338, 190 S.W.2d 305 (1945). In addition, all of the evidence on the nature and extent of the home's affixation to the realty, summarized above, is a factor supporting the conclusion that the home was not "designed for travel upon the public highways." Another very important factor is the size of the home, sixty-five feet long by twelve feet wide. Also, although there were once wheels on the home, these were removed and disposed of by the owner subsequent to installation. The only reason for ever having wheels on the home at all was so that it could be transported to its place of affixation. These are the primary elements that lead us to conclude that the home was not "designed for travel upon the public highways" under § 59–105(d) during October of 1973 or April of 1974.

The trustee places great weight on the 1971 amendment to ·T.C.A. § 59–105(d). This amendment deleted the following words, which had previously been the concluding phrase of the subsection: "except when such vehicle or conveyance has become a fixture attached to the owner's land." The trustee argues that this evidences a legislative intent to include within the provisions of Title 59 any mobile home, whether or not it is a fixture. We need not comment on the validity or invalidity of this argument, for our decision is not contrary to such a legislative intent, if such an intent exists. We have held that the Capella home in the instant case was not a "mobile home" under § 59–105(d) because it was not "designed for travel upon the public high-, ways." That the home in question was legally a fixture is only one factor, albeit an important one, in our decision. Among the other factors we have considered, as we explained above, are the size of the home, the nature and extent of its affixation, and the absence of wheels and axles not only from the home itself but from the owner's possession, all of which indicate that the home was a building and a permanent residence rather than a vehicle "designed for travel upon the public highways" during

the period in question. The absence of an express statutory exemption from the definition of "mobile home" for a vehicle that has merely "become a fixture attached to the owner's land" does not conflict with the rationale or result of our decision.

Since the Capella home in the instant case was not a "mobile home" under § 59–105(d) and so not subject to Title 59 in October of 1973 and April of 1974, perfection of a lien on the home was not controlled by Title 59. The home was a fixture, and liens on it could be perfected by filing "in the office where a mortgage on the real estate concerned would be filed or recorded" under § 47–9–401(1)(b). Defendant complied with this provision on October 23, 1973, when it recorded its deed of trust conveying the realty and its improvements, of which the home was one. Defendant's claim to the home has priority over that of Associates and of the trustee under § 47–9–313(3) because defendant held an interest in the realty when the security interest of Associates attached. Defendant also has priority because Associates' interest was never perfected by filing in accordance with § 47–9–401(1)(b).

The trustee also raises § 59–331, which requires anyone who "scraps, dismantles, or destroys a vehicle" to turn in its certificate of title within 72 hours. He argues that, if the Capella home did cease to be a "mobile home" subject to Title 59 at some time after its installation, § 59–331 would apply to require the certificate of title to be turned in. The trustee asserts that this was never done. We need not, however, decide whether § 59–331 applies in this case. While there is force in the trustee's argument that that section must be applied to prevent a certificate of title to something that is no longer a vehicle from being used to defraud creditors, any fraud in the instant case would be between the owner of the home and Associates, which took a security interest in it on the assumption that it was a vehicle subject to Title 59. Any such fraud could not affect the priority of the lien of defendant, a good faith encumbrancer that took its lien before Associates took its security interest.

We recognize that the concept of a "mobile home" is broad and variable. It is capable of embracing everything from the small, car-drawn trailer to today's large prefabricated or modular house. It can encompass anything that can be fairly included in that range of items that partake of some of the attributes of both a vehicle and a building. The definition of a "mobile home" for legal purposes will vary according to the circumstances, that is, not only according to the nature and surroundings of the vehicle or building itself but also according to the purpose and context of the legal definition. For example, since real estate tax law and zoning law have different purposes and rationales behind them, the group of items included as "mobile homes" under the definition of one might differ from those included under the other.

We wish it to be clear that, in the instant case, we have simply held on the facts before us that a particular home was not "designed for travel upon the public highways" under T.C.A. § 59–105(d) and consequently not subject to the certificate of title provisions of chapters 1 and 3 of Title 59, which deals with the certification and registration of motor vehicles.

The Chancellor's decision is affirmed.

SHRIVER, P. J., and TODD, J., concurs.