**In re Jimmy Lee MILLER, Wilma Charline Miller, Debtors.**

**Bankruptcy No. 3–85–02177.**

United States Bankruptcy Court, E.D. Tennessee.

July 31, 1986.

Ann Mostoller, Oak Ridge, Tenn., for debtors.

Russell E. Simmons, Jr., Rockwood, Tenn., for First Nat. Bank & Trust Co.

Allen E. Schwartz, Knoxville, Tenn., for Transouth Financial Corp.

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

As in *Associates Capital Corp. v. Cookeville Production Credit Ass'n,* 569 S.W.2d 474 (Tenn.Ct.App.1978), the issue in this case is whether a mobile home that has had its wheels removed and has been affixed to realty is subject to the Tennessee Motor Vehicle Title and Registration Law, Title 55 of the Tennessee Code. If so, the security interest of Transouth Financial Corporation (Transouth), noted on a certificate of title to the home, is perfected and takes priority over the deed of trust of First National Bank and Trust Company (Bank), whose lien is not noted on the certificate. On the other hand, if Title 55 is not applicable the Bank's deed of trust and security agreement entitle it to priority. Resolution of this issue will determine which creditor's claim will be allowed as a secured claim in this Chapter 13 case.

In 1984 the Bank financed the purchase of a used mobile home for the debtors. On April 25, 1984, the debtors executed a trust deed to secure the Bank in the sum of $17,400.00. (This amount apparently includes precomputed interest.) The debtors

conveyed in trust to the Bank a tract of 3.26 acres and a 20' right of way. Further, the deed of trust recites: "There is also conveyed herewith a 1980 Classic Mobile Home, 75 × 14 feet, Serial Number 8931 ... with the hereditaments and appurtenances thereto appertaining...." [1]

The deed of trust was recorded in the Roane County Register's Office on May 9, 1984. As stated heretofore the Bank did not cause its lien to be noted on the certificate of title.

In July 1985, the debtors approached Transouth for a loan on the mobile home, furnishing them with a "clear" certificate of title. Transouth inspected the mobile home and on July 22, 1985, made a loan to the debtors in the amount of $6,015.28. The debtors executed a note and security agreement pledging the mobile home as collateral for the loan. The debtor, Jimmy Lee Miller, testified he advised Transouth of the prior loan by the Bank. Transouth disputes this statement. On August 12, 1985, Transouth caused its lien to be noted on the certificate of title as "First Lienholder."

The wheels were removed from the mobile home when it was placed on the debtors' property. The wheels apparently belonged to the seller and were used only to move the mobile home from the dealer's lot to the debtors' property. The mobile home was set on blocks, "tied-down," and connected to a septic tank and utility outlets. Central heat and air conditioning was installed. Also, a back porch was built.

## II

The facts in this case are almost identical to those in *Associates Capital Corp. v. Cookeville Production Credit Ass'n, supra. Associates* involved a 12' × 65' mobile home. To secure a purchase-money loan of $51,286.00 from the Cookeville PCA, Gaw and Adams executed a deed of trust conveying certain realty "together with all buildings and improvements thereon or hereafter erected thereon and all rights and appurtenances thereto belonging...." The deed was properly recorded in the Jackson County Register's Office. Subsequently, Gaw borrowed $5,256.00 from Associates Capital Corporation. In a note and security agreement dated April 12, 1974, Gaw and his wife granted Associates a security interest in a 1971 Capella mobile home to secure payment of the note. The security agreement contained the Gaws' warranty that the collateral was free of all security interests, liens and encumbrances. Associates entered its name as "1st lienholder" on a motor vehicle certificate of title, which was certified by the Commissioner of the Department of Revenue on May 31, 1974.

The central issue before the court was whether the Capella mobile home was subject to the certificate of title provisions of chapters 1 and 3 of former Title 59 of the Tennessee Code.[2] The Tennessee Court of Appeals, in an opinion of Judge Drowota (now Justice Drowota), held that it was not. After discussing former Title 59, the court stated:

> We conclude that the above described provisions of Title 59 did not apply to the Capella home at the time the deed of trust to defendant was executed and recorded, because the home did not qualify at that time as a "mobile home" under the definition given in § 59–105(d). In October of 1973, the home in the instant case was not "designed for travel upon the public highways," nor was it so designed when Gaw and Associates executed their security agreement on April 12, 1974. The quoted phrase necessarily implies that a "mobile home" under the statute is either one that is in a condition to act as a conveyance over the public highways or one that may, with a relatively reasonable amount of effort, be reconverted into such a condition. The

---

1. The debtors also executed a security agreement to the Bank pledging the mobile home as security for the debt.

2. The Tennessee Motor Vehicle and Registration Law has been recodified as Title 55 since the *Associates* case was decided.

Capella home in the instant case does not meet that description.

Our decision that the Capella home was not "designed for travel upon the public highways" in October of 1973 and April of 1974 is the product of several factors, no one of which is conclusive in and of itself. First the Chancellor found that the home was legally a fixture to the realty, a finding supported by the evidence and by the authority defining fixtures in Tennessee. See *Dudzick v. Lewis*, 175 Tenn. 246, 133 S.W.2d 496 (1939); *Fuson v. Whitaker*, 28 Tenn.App. 338, 190 S.W.2d 305 (1945). In addition, all of the evidence on the nature and extent of the home's affixation to the realty, summarized above, is a factor supporting the conclusion that the home was not "designed for travel upon the public highways." Another very important factor is the size of the home, sixty-five feet long by twelve feet wide. Also, although there were once wheels on the home, these were removed and disposed of by the owner subsequent to installation. The only reason for ever having wheels on the home at all was so that it could be transported to its place of affixation. These are the primary elements that lead us to conclude that the home was not "designed for travel upon the public highways" under § 59–105(d) during October of 1973 or April of 1974.

*Associates*, 569 S.W.2d at 477–78.

The decision of the Tennessee Court of Appeals in *Associates* controls the dispute between the Bank and Transouth. It therefore follows:

(1) That the First National Bank and Trust Company, by reason of its properly recorded deed of trust, holds a perfected lien against the mobile home involved in this dispute; and

(2) That Transouth Financial Corporation holds an unperfected lien against the mobile home, subordinate to the rights of the trustee in bankruptcy. 11 U.S.C.A. § 544(a) (West Supp.1986).

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.