IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2, 2019 Session

## MARILYN KAY ANDERSON v. JAMES CEPHAS ANDERSON

**Appeal from the Circuit Court for Robertson County**
**No. 74CC2-2015-CV-233          Ross H. Hicks, Judge**

_____

### No. M2018-01248-COA-R3-CV

_____

This appeal arises from a divorce. All the issues pertain to the classification, valuation, and equitable division of three large tracts of land. Husband acquired two of the tracts before the marriage: a 197-acre tract and a 103-acre tract. Both of these tracts were used in Husband's farming operation before and during the marriage. During the marriage, Husband and Wife built their marital residence on a portion of the 197-acre tract. Husband acquired the third tract during the marriage but after the parties separated. Wife's name is not on any of the deeds. Wife contends that the tracts Husband owned prior to the marriage transmuted into marital property. Alternatively, she contends their appreciation in value during the marriage was marital property. Wife also contends the third tract was marital property because Husband purchased it with marital funds from their joint bank account during the marriage. The trial court classified the 197-acre tract and the 103-acre tract as Husband's separate property and held that none of the land transmuted into marital property. The trial court also concluded that Wife was not entitled to an interest in the appreciation of the properties because she did not substantially contribute to their maintenance or increase in value. The trial court classified the marital residence—that being the improvement but not any of the land associated with the marital residence—as marital property. As for the tract Husband acquired during the marriage, the court ruled that it was Husband's separate property because Husband purchased it with his separate funds. This appeal followed. Based on the parties' treatment and use of some of the 197-acre tract on Highland Road as their marital residence, it is evident that the parties intended for some portion of the land to transmute into marital property. Therefore, we reverse the trial court's determination that the entire 197-acre tract remained Husband's separate property and remand for the trial court to identify that portion of the land the parties treated and used as part of their marital residence, classify that land as marital property, and determine its value. Based on this change of classification, the trial court should also consider whether the change in value necessitates a revision of the equitable division of the marital estate and, if so, enter judgment accordingly. In all other respects, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded.**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and W. NEAL MCBRAYER, J., joined.

Elizabeth A. Garrett and Trudy L. Bloodworth, Nashville, Tennessee, for the appellant, Marilyn Kay Anderson.

Christopher J. Pittmans and Hollie L. Smith, Clarksville, Tennessee, for the appellee, James Cephas Anderson.

## OPINION

Marilyn Kay Anderson ("Wife") and James Cephas Anderson ("Husband") met in 1988. Husband lived in Robertson County, Tennessee, where he operated a farm on Duer's Mill Road. Husband owned the 103-acre tract of land jointly with his brother. In 1990, Husband expanded his farming operation by purchasing a 197-acre tract of land on Highland Road. During this time, Wife lived in the Nashville area and spent her weekends on the farm with Husband.

When the parties married in 1995, they moved into a trailer located on the 197-acre tract of land on Highland Road. Husband added Wife to the farm's credit line and his previously separate checking account; however, he did not add Wife's name to either deed.

Wife worked as a medical project manager throughout the marriage and deposited all her income into the joint account. Likewise, Husband deposited all his farming income into the same joint account. The parties paid all their personal and business expenses from the account, including payments for Husband's $160,000 mortgage on the Highland Road property.

In 2002, Husband and Wife purchased a tract of land on Eubanks Road, the deed for which was titled to them jointly. In 2007, the parties moved into a house on the Eubanks Road property while they built their marital residence on the Highland Road property. The parties financed the new home with $250,000 in loans secured by the jointly-owned Eubanks Road property. When construction was completed, the parties moved into their new marital residence on the 197-acre Highland Road property.

In March 2015, the parties separated. That same month, the State of Tennessee initiated an eminent domain action to condemn a portion of the Eubanks Road property the parties owned jointly. In April 2015, the parties received an initial disbursement of $320,000 from the State of which $158,000 was remitted to the mortgage company to pay

off the loans for the construction of the marital residence. The balance of $162,000 was deposited into the parties' joint checking account on April 15, 2015.

Shortly thereafter, while separated and in anticipation of the divorce, although neither party had filed a complaint for a divorce, Wife "equally divide[d]" the funds on deposit in the joint account by withdrawing "her half"—approximately $96,000—and depositing it in a separate account titled to her name only.

Husband's mother died in March of 2015. In her will, she granted Husband an option to purchase the J. B. Anderson family farm for $150,000.[1] Pursuant to the will, Husband had only 90 days to exercise his option. Husband timely exercised his option and purchased the J. B. Anderson family farm with $80,000 he withdrew from the parties' joint checking account on April 21, 2015, and a $70,000 loan he obtained in his name only. The deed to the property was in Husband's name only.

Wife filed her complaint for divorce on April 29, 2015, and Husband filed a counter-complaint on June 26, 2015.

In September 2017, the State of Tennessee remitted an additional $489,000 payable to Husband and Wife in furtherance of the condemnation of the jointly owned Eubanks Road property. In October 2017, the trial court entered an agreed order dividing the award equally between the parties and stating that the funds "shall be deemed to be each part[y]s' separate property."

The parties' only daughter was an adult at the time of trial, and neither party sought alimony. Thus, the issues at trial were limited to the classification, valuation, and equitable division of the marital estate.[2] Wife contended that Husband's interests in the Highland Road and Duer's Mill Road tracts transformed into marital property during the marriage under the doctrine of transmutation. In the alternative, Wife claimed the properties' increase in value during the marriage was marital property due to her personal and financial contributions to the properties' preservation and appreciation. As for the Anderson Road tract, Wife argued that it was a marital asset because Husband purchased it during the marriage with funds from the joint account. For his part, Husband contended

---

[1] Husband had been working the land on Anderson Road, which was known as the J. B. Anderson Farm, for several years pursuant to a lease with his mother.

[2] The parties stipulated that the Eubanks Road tract was marital property, and Husband did not dispute Wife's valuation of that tract. The parties also stipulated as to the value of the farming equipment and cattle. Neither party presented evidence regarding the farming operation as an ongoing business.

all three tracts were his separate property. But Husband conceded that the marital residence, which was located on the 197-acre Highland Road tract, was marital property.

Each party testified on their separate contributions, or lack thereof, to the marriage and the farming operation. In addition, each presented an expert witness to testify on the properties' values and the reasons for their appreciation. Wife's appraiser, Ben Bolinger, attributed the land's increase in value to the successful farming operation and soil quality. He reasoned that soil productivity was important for buyers because the highest-and-best use of the property was farming. Husband's appraiser, Luther Bratton, attributed the appreciation primarily to the passage of time.

In the final order entered on June 8, 2018, the court classified the marital residence and a machine shed on the Highland Road tract as marital property, but it found the underlying 197 acres of land remained Husband's separate property. The court also classified Husband's interest in the 103 acres of land on Duer's Mill Road as Husband's separate property. As for both tracts, the court reasoned, *inter alia*, that Husband used the land primarily for his farming operation and Wife's financial contributions were unnecessary because the farming operation was successful. Additionally, the court found that the properties' increase in value during the marriage remained Husband's separate property. The court found that Wife's testimony about her personal contributions to the day-to-day farming operations was "substantially exaggerated or fabricated," and the primary factor in the properties' appreciation was the passage of time. As for the Anderson Road property, the court classified it as Husband's separate property because Husband purchased it with his share of the recently and equally divided bank account.

In valuing the properties, the court found Husband's expert, Mr. Bratton, more credible than Wife's expert, Mr. Bolinger. The court noted that Mr. Bolinger valued one property without visiting it and included a building on the Duer's Mill tract where other evidence suggested there was none. Using Mr. Bratton's property values, the court valued Husband's separate property at $2.1 million and Wife's separate property—which comprised only her share from the condemnation proceeds—was worth $160,000.[3]

Considering the factors for equitable division of marital property under Tenn. Code Ann. § 36-4-121(c), the court found both parties were in good physical and mental health and had substantial income earning capacity. Because Husband's separate property

---

[3] Prior to trial, the parties stipulated that they "previously equally divided funds totaling $321,816.52" which "represent the final settlement proceeds that the parties received in the [e]minent domain matter concerning marital property owned by the parties."

was worth substantially more than Wife's, the court found it was equitable to award Wife a larger portion of marital property, including the majority of the liquid assets. Accordingly, the court awarded 59% of the marital estate to Wife, valued at $866,950, and awarded 41% of the marital estate to Husband, valued at $605,976. This appeal followed.

Wife raises four issues on appeal, which we restate as follows:

(1) Whether the trial court erred in classifying the Highland Road tract as Husband's separate property;
(2) Whether the trial court erred in classifying the appreciation of the Highland Road tract and the Duer's Mill tract as Husband's separate property;
(3) Whether the trial court erred in adopting Mr. Bratton's values for the Highland Road, Duer's Mill, and Anderson Road tracts; and
(4) Whether the trial court erred in classifying the Anderson Road tract as Husband's separate property.

Additionally, each party seeks to recover his and her attorneys' fees incurred on appeal.

## ANALYSIS

"Dividing a marital estate necessarily begins with the systematic identification of all the parties' property interests." *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007) (citing 19 W. Walton Garrett, *Tennessee Practice: Tennessee Divorce, Alimony and Child Custody with Forms* § 15:2 (rev. ed. 2004)). Once identified, these property interests must be classified as either separate or marital property. *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). Because Tennessee is a "dual property" state, *see Smith v. Smith*, 93 S.W.3d 871, 875–76 (Tenn. Ct. App. 2002)), only property that fits within the definition of "marital property" can be included in the marital estate, *Owens*, 241 S.W.3d at 485. Yet, as this court explained in *Fox v. Fox*,

> The dividing line between marital and separate property frequently becomes blurred. Marital property can become separate property when one spouse gives it to the other spouse. *Kinard v. Kinard*, 986 S.W.2d 220, 232 (Tenn. Ct. App. 1998); *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989). On the other hand, separate property can become marital property either through commingling or transmutation. Even if an asset is clearly separate property, the increase in the asset's value during the marriage and the income from the asset may be considered marital property if the nonowner spouse contributed substantially to the asset's preservation and appreciation. Tenn. Code Ann. § 36-4-121(b)(1)(B); *Cohen v. Cohen*, 937 S.W.2d 823, 832–33 (Tenn. 1996); *Harrison v. Harrison*, 912 S.W.2d

124, 127 (Tenn. 1995). Contributions to the preservation or appreciation of a separate asset will be considered "substantial" if they are real and significant. *Mitts v. Mitts*, 39 S.W.3d 142, 145 (Tenn. Ct. App. 2000); *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994).

No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *3 (Tenn. Ct. App. Sept. 1, 2006) (footnotes omitted).

"Questions regarding the classification of property as either marital or separate , as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual." *Owens*, 241 S.W.3d at 485 (citations omitted). Likewise, questions relating to the valuation of property are issues of fact, *id.* at 486 (citing *Kinard*, 986 S.W.2d at 231), as is "[t]he resolution of conflicting expert testimony," *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 85 (Tenn. 2008). Accordingly, the appellate courts review a trial court's decisions classifying and valuing the parties' assets using the familiar standard of review in Tenn. R. App. P. 13(d). *See Owens*, 241 S.W.3d at 485; *Stratienko v. Stratienko*, 529 S.W.3d 389, 410 (Tenn. Ct. App. 2017).

Under Tenn. R. App. P. 13(d), we review a trial court's determinations on issues of fact "de novo upon the record." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). We presume the court's findings are correct, "unless the preponderance of the evidence is otherwise." *Id.* "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) (citations omitted). Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## I.  CLASSIFICATION OF THE HIGHLAND ROAD PROPERTY— THE MARITAL RESIDENCE, MACHINE SHED, AND FARMLAND

Wife contends that the 197-acre Highland Road tract became marital property based on the legal principle of transmutation because the parties treated the property in such a way as to evidence an intention that it become marital property. In particular, she asserts that the parties used the Highland Road tract as the location for their marital residence for twenty years; maintained and managed the property through physical labor and financial contributions; and used Wife's credit to obtain loans to build the marital residence and keep the soil productive. In the alternative, she contends that the appreciation of the farmland became marital property because she substantially contributed to its appreciation through her role as a wage earner.

Husband concedes that the structures the parties built on the Highland Road farm—the marital residence and machine shed—are marital assets, but contends that the underlying land remains his separate property.[4]

The trial court ruled that the two improvements the parties built on the Highland Road tract during the marriage—the marital residence and machine shed—were marital assets. The court based its ruling, in part, on the following:

> 20. Assets acquired individually by a party prior to marriage are assumed to be that party's separate property and the other party has the burden of proving by a preponderance of the evidence that the asset should be characterized as marital property instead. *See Owens vs. Owens*, 241 [S.W.3d] 478, 485[–86] (Tenn. Ct. App. 2007).

> 21. It is undisputed that the Wife contributed her income to the parties' joint bank account and that from the account in which both parties contributed income, the parties built a residence on the Husband's separate property. **During the marriage, a machine shed was also built on the property. The Court determines that the marital residence itself and the machine shed built during the marriage are marital property**. As the parties have also both conceded that the Husband should receive this property, the Court will consider the value of the [marital residence and machine shed] in equitably dividing the marital property.

(emphasis added).

However, the court ruled that the 197 acres of land remained Husband's separate property based on the following:

---

[4] In his appellate brief, Husband also contends that the marital residence was "located and constructed" on property that was "in fact separate from the 197-acre farm tract." The only citation to the record to support this alleged fact is Trial Exhibit 25, which is the appraisal of Mr. Bratton. The exhibit neither states nor implies that the marital residence was "located and constructed" on property that was "in fact separate from the 197-acre farm tract." In fact, the appraisal identifies the property as one tract, "a 197.35-acre improved farm located at 6771 Highland Road, Portland, Tennessee 37148. This tract of land is improved with a residence, barns, and sheds." The appraisal also values the marital residence at $327,292 and the "land value" at $1,100,000. When combined with the other improvements on this property, the total value is listed at $1,482,963.

22.     . . . . With the Court considering the marital residence separately from the land, the Court determines that the land itself was primarily used for the same farming operation the Husband was conducting prior to the parties' marriage. While the Court determines that the Wife's contribution of income to the joint account certainly assisted the parties in the payment of their regular expenses, the testimony also clearly shows that the Husband was able to make the payment owing on his separate property prior to the parties' marriage through his farming operations and that he continued to operate as a successful farmer after the parties' marriage. It is the finding of this Court that the Wife's contribution to the parties' living expenses during the parties' marriage did not act to transmute this separate property from the Husband's separate property to marital property. The farm land was owned by the Husband prior to the marriage, and, with the exception of the house which was constructed, was primarily used for the same purpose both before and after the marriage and was primarily farmed by the Husband with little input from the Wife. While the parties' joint account did pay off the mortgage owing on the land, there was a substantial history of the Husband making regular consistent payments on the mortgage prior to marrying the Wife and the Court does not determine that this property was transmuted into marital property, nor does the Court determine that the Wife's income was required for the mortgage to be paid.

(Emphasis added).

Neither party objects to the determination that the marital residence and the machine shed are marital assets. Wife, however, contends the entire Highland Road tract—including the farmland—became marital property. As the foregoing reveals, the trial court considered "the marital residence separately from the land," and the court focused its attention on whether Wife's financial contributions were necessary to sustain the farming operation. We have determined that the trial court should have focused its inquiry on the intention of the parties in deciding whether any or all of the 197 acres transmuted to marital property.

"[Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 256 (Tenn. 2009) (quoting *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002)). In determining intent, "the ultimate test is how the property was treated by the parties." *Strickland v. Strickland*, No. M2012-00603-COA-R3-CV, 2012 WL 6697296, at *17 (Tenn. Ct. App. Dec. 21, 2012). Factors include (1) the use of the

property by the family or to support the marriage; (2) shared control, maintenance, or management of the property; (3) titling the property jointly; and (4) use of the non-owner spouses' credit or separate funds to pay for or improve the property. *Luplow v. Luplow*, 450 S.W.3d 105, 114 (Tenn. Ct. App. 2014) (quoting *Fox*, 2006 WL 2535407, at \*3); 2 John Tingley and Nicholas B. Svalina, *Marital Property Law* § 42:30 (2d ed.); *see also Woodward v. Woodward*, 240 S.W.3d 825, 829 (Tenn. Ct. App. 2007) (use as marital residence); *McClellan v. McClellan*, 873 S.W.2d 350, 352 (Tenn. Ct. App. 1993) (intent to use as permanent family home); *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995) (use of marital and non-owner spouse's funds).

Similarly, the parties' intent is central in determining whether an improvement has become part of the land to which it is attached. *See Hickman v. Booth*, 173 S.W. 438, 438 (Tenn. 1915). To determine whether the parties intended an improvement to be annexed, our courts "must look to the manner and strength of its attachment to the realty" and "the difficulty and consequences of removing it."[5] *Keenan v. Fodor*, No. M2011-01475-COA-R3-CV, 2012 WL 3090303, at \*6 (Tenn. Ct. App. July 30, 2012). Courts also consider the "use or purpose to which that part of the realty to which it is connected is appropriated." *Fuson v. Whitaker*, 190 S.W.2d 305, 306 (Tenn. Ct. App. 1945) (emphasis in original) (quoting 22 Am. Jur., p. 715, § 3). Accordingly, we have recognized that "buildings erected on land generally become part of the real property and are conveyed with the land." *In re Estate of Ross*, No. M2012-02228-COA-R3-CV, 2013 WL 3346717, at \*7 (Tenn. Ct. App. June 27, 2013); *see also Foster & Creighton Co. v. Travelers Indem. Co.*, 451 F.2d 1009, 1010 (6th Cir. 1971) (finding pilings became "a physical part of the realty"); *Dudzick v. Lewis*, 133 S.W.2d 496, 497–98 (Tenn. 1939) (holding that cabins became part of the land); *First Nat. Bank of Rogersville v. Hawkins Cty.*, 463 S.W.2d 946, 951–52 (Tenn. Ct. App. 1970) (holding sign passed to landowner when affixed to land).

It is undisputed that the marital residence is a marital asset, and the parties intentionally built and permanently affixed it to Husband's separate property.[6] Applying

---

[5] "At common law the method of annexation seems to have been the criterion for determining whether or not a fixture was personalty or realty." *Fuson*, 190 S.W.2d at 306 (emphasis in original). However, "[p]ractically all modern decisions have gotten away from this test and . . . the usual tests applied are: '(1) Annexation to the realty, either actual or constructive; (2) *adaptation or application to the use or purpose* to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold.'" *Id.* (emphasis in original) (quoting 22 Am. Jur., p. 715, § 3).

[6] When the parties married, they moved a mobile home onto the property, which they used as their marital residence for twelve years. Neither party is arguing that the mobile home became part of the

(continued . . .)

the legal principle that buildings erected on land generally become part of the real property, and recognizing that the parties intended for the marital residence to be a family home, it is apparent the parties intended for the land, or at least that portion of the land used in conjunction with the marital residence, to be marital property.[7] *See Araya v. Keleta*, 65 A.3d 40, 56 (D.C. 2013) (recognizing that a trial court may treat separate property as "transformed" when "(1) the two items of property came to be used as one property and (2) one or both properties would be destroyed or damaged or left with a gaping deficiency or defect if the properties were separated" (footnotes omitted)). Because the marital residence became part of the land, and conversely at least some of the land became part of the marital estate, we respectfully reverse the trial court's determination that the entire 197-acre tract on Highland Road remained Husband's separate property.[8]

Therefore, we remand this issue so the trial court can identify the portion and value of the land that became a part of the marital residence and estate.[9] In making this determination, the intent of the parties is the guiding principle. *See Snodgrass*, 295 S.W.3d at 256. To determine the parties' intent, the trial court may consider, among

---

land. However, the evidence in this record, including the nature and extent of the affixation of the marital residence to the land, and the size of the home constructed in 2012, proves that the marital residence was permanently affixed to the land. *See Assocs. Capital Corp. v. Cookeville Prod. Credit Ass'n*, 569 S.W.2d 474, 477–78 (Tenn. Ct. App. 1978) (finding mobile home was affixed to the land).

[7] Although it may be possible for a home built on a zero lot line in a major urban area to have no accompanying land, a court could take judicial notice that a marital residence on farmland in rural Robertson County would include some portion of the land surrounding the residence.

[8] We recognize that we have disapproved the classification of improvements separately from land in past cases concerning the valuation of property and attribution of post-marriage appreciation. *See Stinnett v. Ferguson*, No. E2001-02031-COA-R3-CV, 2002 WL 445073, at *1 (Tenn. Ct. App. Mar. 22, 2002) (rejecting husband's argument that he should be awarded the amount of money he invested into constructing cabins on wife's separate property); *Denton v. Denton*, 33 S.W.3d 229, 235 (Tenn. Ct. App. 2000) (finding husband substantially contributed to a property's preservation and appreciation when "*viewed as one piece of property*"). Additionally, in *Fox* we reversed the trial court's mixed-classification of two properties when it arbitrarily classified the properties' *overall* value as 25% marital and 75% separate. 2006 WL 2535407, at *2–3; *but see Arp v. Arp*, No. 03A-019808-CV-00273, 1999 WL 427610, at *2 (Tenn. Ct. App. June 18, 1999) (affirming trial court's classification of property as 50% separate and 50% marital). The present matter is distinguished from these cases in that there was evidence that the Highland Road property served a dual purpose, as a farm and residence.

[9] Our ruling, however, does not suggest that the entire 197-acre tract on Highland Road became part of the marital residence and thus marital property.

- 10 -

other relevant factors and evidence, the uses to which the various sections of the 197-acre tract were put after the parties moved into the marital residence for use as their home. *See, e.g.*, *Brown v. Brown*, 784 So. 2d 464, 468 (Fla. Ct. App. 2001) (reversing trial court's mixed-classification of 54-acre tract underlying the marital residence when "[a]ll fifty-four acres were fenced" and "[t]he family treated the entire parcel as the family home and made use of all of it").

As for the "machine shed," the record fails to establish that the parties' "treated" or "used" the land associated with the machine shed as marital property. As noted earlier, "[transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property." *Snodgrass*, 295 S.W.3d at 256 (quoting *Langschmidt*, 81 S.W.3d at 747). The parties' intent is central in determining whether an improvement has become part of the land to which it is attached, *see Hickman*, 173 S.W. at 438, and in determining intent, "[t]he ultimate test is how the property was treated by the parties." *Strickland*, 2012 WL 6697296, at *17. Therefore, the evidence does not preponderate in favor of a finding that the parties intended for the land associated with the shed to become marital property.

Moreover, the evidence does not preponderate in favor of a finding that "the manner and strength of [the machine shed's] attachment to the realty" or "the difficulty and consequences of removing it" made the land part of the machine shed or the machine shed part of the land. *See Keenan*, 2012 WL 3090303, at *6. Although one of the appraisals indicates that the machine shed was "permanently affixed" to the land, there is no evidence in the record concerning "the manner and strength of its attachment to the realty" or "the difficulty and consequences of removing it." *Id.*

For the foregoing reasons, the evidence fails to establish that the parties' treatment and uses of the machine shed and/or the construction of the machine shed on Husband's separate property transmuted any portion of the land into marital property. Accordingly, we affirm the determination that the machine shed is a marital asset and that the land associated with the machine shed remains Husband's separate property.

Wife also claims the increase in value of Husband's separate property on Highland Road[10] and Duer's Mill Road[11] is marital property because her financial contributions enabled Husband to retain the properties.[12] For his part, Husband contends that Wife's *de minimis* contributions did not affect the appreciation in value of the properties; instead, he contends the appreciation was market-driven and attributable to the passage of time. Thus, Husband argues that Wife is not entitled to any share of the increased value of these properties.

As noted previously, Wife's appraiser, Mr. Bolinger, attributed both tracts' increase in value to the successful farming operation and soil productivity. Conversely, Husband's appraiser, Mr. Bratton, attributed the properties' appreciation to the passage of time. The court found Mr. Bratton's appraisals more credible than those of Mr. Bolinger and, thus, found the appreciation of the properties was due primarily to the passage of time. The court also found, *inter alia*, that Husband could have maintained the land without Wife's contributions because the farming operation was successful. In other words, Wife's financial contributions were unnecessary to preserve the properties. Therefore, the court ruled that the increase in value remained Husband's separate property.

As the trial court correctly stated in its final order:

Tenn. Code Ann. § 36-4-121[(b)(1)(B)(i)] states that "marital property" includes any increase in the value during the marriage of property determined to be separate property if each party substantially contributed to its preservation *and* appreciation. To be considered substantial, a spouse's

---

[10] Because we have remanded the trial court's determination that the entire 197-acre tract on Highland Road is Husband's separate property, our analysis as to the Highland Road property pertains only to the portion the trial court identifies as Husband's separate property.

[11] Wife does not appeal the trial court's classification of the Duer's Mill tract as Husband's separate property.

[12] At trial, Wife claimed that her work in the farming operations substantially contributed to the properties' increase in value. The trial court, however, found Wife's testimony on this issue was "substantially exaggerated or fabricated." On appeal, Wife relies only on her role as a wage earner to show that she substantially contributed to the appreciation.

contribution to the preservation and appreciation of the property must be "real and significant." *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). There also must be some link between the non-owner spouse's contributions and the appreciation in the value of the separate property. *Langschmidt v. Langschmidt*, 81 S.W.3d at 746 (Tenn. 2002).

(emphasis added). As used in Tenn. Code Ann. § 36-4-121(b), "'substantial contribution' may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine[.]" *Id.* § 121(b)(1)(D). We agree with the trial court that Wife failed to show she substantially contributed to the preservation and appreciation of the properties.

Wife claims that her role as wage earner enabled Husband to retain the property, citing to *Clement v. Clement* for the proposition that "[a] contribution is substantial if it enabled the spouse who owns the property to retain it during the marriage." No. W2003-02388-COA-R3-CV, 2004 WL 3396472, at *11 (Tenn. Ct. App. Dec. 30, 2004). In *Clement*, however, we found the wife "devoted herself to the responsibilities of a homemaker with [the husband]'s blessing," thus enabling the husband "to spend much of his time outside the home pursuing business interests, community involvement, and recreational activities." *Id.* Here, the trial court found Husband's testimony credible regarding the success of his business, which made Wife's financial contributions unnecessary to keep or maintain the land.

Even if Wife's financial contributions substantially contributed to the *preservation* of the properties, the plain language of Tenn. Code Ann. § 36-4-121(b) also required Wife show that she contributed to the properties' *appreciation*. *See Harrison*, 912 S.W.2d at 126–27 (finding spouse's assistance with care of cattle and payments on mortgage did not transform the increased value in property into marital property when the sole reason for the appreciation was the construction of I-24). The trial court accepted Mr. Bratton's explanation that the properties increased in value due to the passage of time rather than the success of the farming operation. As discussed below, we find no reason to reverse the trial court's decision to credit Mr. Bratton's appraisals over those of Mr. Bolinger.

The trial court found that the primary factor in the property's appreciation was the passage of time and that Wife's *de minimis* contributions did not substantially contribute to the maintenance of Husband's separate properties; therefore, the court ruled that the increase in value remained Husband's separate property. We have determined that the trial court applied the correct legal standards, and the evidence does not preponderate against the findings upon which the court based its ruling. Accordingly, we affirm the trial court's classification of the appreciation in value of the farmland on Highland Road and Duer's Mill Road as Husband's separate property.

- 13 -

Wife also contends the trial court erred by accepting Mr. Bratton's appraisals for the Highland Road, Duer's Mill, and Anderson Road properties. Wife asserts that Mr. Bratton's appraisals were flawed because he based them on "residential information" and did not consider soil quality or farm productivity.[13] Citing to *Fickle v. Fickle*, 287 S.W.3d 723, 729–31 (Tenn. Ct. App. 2008), Wife argues that a farm operation's continued profitability and soil quality increases the land's value when its highest-and-best use is farming. Respectfully, we find Wife's reliance on *Fickle* is misplaced. Our recognition that soil quality and profitability is relevant to the value of farmland was not a mandate requiring that appraisals consider these criteria. *See Willamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n*, 11 S.W.3d 142, 149 (Tenn. Ct. App. 1999) (rejecting plaintiff's argument that a particular valuation method must be used to value timberland); *Green v. Arnold*, 150 S.W.2d 1075, 1076 (Tenn. Ct. App. 1940) ("Land is not a commodity of a fixed market value, no two acres being of the same intrinsic value; market value . . . is a question to be determined by the [finder of fact] from their own knowledge and the opinion of the witnesses as to the market value, taken in connection with the other proven circumstances of value.").

"[V]aluation evidence is inherently subjective," *Owens*, 241 S.W.3d at 489, and weighing competing expert opinions is a matter for the trier of fact, *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 275 (Tenn. 2005). When an expert's methodology is patently flawed, courts can and should discount the expert's opinion. *Owens*, 241 S.W.3d at 488 (citing *Clement*, 2004 WL 3396472, at *9–10). That said, when the evidence supports an expert witness's testimony "and the trier of fact credits that testimony over others, there is no basis to reverse the court's findings.'" *Estate of Fetterman ex rel. Fetterman v. King*, 206 S.W.3d 436, 445 (Tenn. Ct. App. 2006) (quoting *Atkins v. State*, No. E2003-01255-COA-R3-CV, 2004 WL 787166, at *5 (Tenn. Ct. App. Apr. 14, 2004)).

Wife did not object to Mr. Bratton's opinion when he offered it on direct examination, and she later cross-examined Mr. Bratton on his methodology. Thus, the court determined the credibility of Mr. Bratton's opinion based on the testimony elicited by the parties. "Where the issue for decision depends on the determination of the

---

[13] The trial court overruled Wife's objection to admitting Mr. Bratton as an expert witness on the basis that he was certified only as a residential appraiser. Wife did not challenge Mr. Bratton's qualifications on appeal.

credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight." *Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 426 (Tenn. 1989).

We have reviewed the testimony of Mr. Bratton, and we find no basis for completely discounting his opinion on the properties' value or the reason for their increase in value. Nevertheless, because we have reversed the trial court's classification of the Highland Road property, on remand the trial court must revise its valuation of Husband's separate property and the portion of the land on Highland Road that transmuted into marital property. Accordingly, although we find no error in the trial court's decision to credit Mr. Bratton's opinion over that of Mr. Bolinger, we remand this issue for a revision of the value of Husband's separate property and the marital estate.

## IV.     THE J. B. ANDERSON FARM PROPERTY

Finally, Wife contends the trial court misclassified the Anderson Road tract as Husband's separate property because Husband acquired the property before the parties divorced with marital funds from their joint bank account. Husband counters, arguing Wife took "her half" of the funds in their joint checking account after they separated, leaving the remaining half as his separate property.

It is undisputed that the Anderson Road tract had served as the Anderson family farm for years, and Husband's parents intended for Husband to receive this land. Further, the parties stipulated that Husband's parents placed an option in their wills so Husband could purchase the property for an amount per acre that was substantially below market value. The deadline for exercising this option, however, would have passed before Husband and Wife were divorced. Electing to purchase the property before the divorce was final, Husband obtained a loan of $70,000 from the bank and withdrew $80,000 from the parties' joint checking account to fund the purchase price of $150,000. Additionally, it was undisputed that Husband promptly paid off the loan through separate inheritance funds received from the settlement of his mother's estate.

Moreover, it is undisputed that the funds Husband withdrew from the joint account were a portion of the $162,000 in proceeds received in March 2015 from the partial condemnation of the Eubanks Road property, which the parties owned jointly. Thus, the funds were a marital asset. Significantly, however, it is undisputed that Wife divided the funds as the marriage was ending, made "her half" of the condemnation proceeds her separate property, and intended that the remaining funds be "Husband's share" of the condemnation proceeds and his separate property.

Based on these facts, the trial court determined that the $80,000 Husband used to exercise his option on the Anderson Road tract were Husband's separate property. Therefore, the trial court concluded, "it is clear that the [Anderson Road] property should

be deemed to be the Husband's sole and separate property for which the Wife has no interest."[14] We agree. Therefore, we affirm the determination that the Anderson Road tract is Husband's separate property.

## V.    ATTORNEY'S FEES

Both parties ask for an award of attorney's fees on appeal. Whether to award attorney's fees incurred on appeal is a matter within this court's sole discretion. *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). In determining whether an award for attorney's fees is warranted, we consider, *inter alia*, the ability of the requesting party to pay his or her own attorney's fees, that party's success on appeal, whether that party has acted in good faith, and whether an award of attorney's fees is equitable. *Id.* (citing *Parchman v. Parchman*, No. W2003-01204-COA-R3-CV, 2004 WL 2609198, at *6 (Tenn. Ct. App. Nov. 17, 2004)). Considering the foregoing, we have determined that neither party is entitled to attorney fees on appeal.

## IN CONCLUSION

We reverse the trial court's determination that the entire 197-acre tract on Highland Road remained Husband's separate property and remand for the trial court to identify that portion of the land the parties treated and used as part of their marital residence, classify that land as marital property, and determine its value. Based on this change of classification, the trial court should also consider whether the change in value necessitates a revision of the equitable division of the marital estate and, if so, enter judgment accordingly. In all other respects, we affirm the judgment of the trial court.

Costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[14] The trial court valued the Anderson Road property at $509,500. The trial court also stated in its final order, "It is further undisputed that the Wife took no steps to contribute to any appreciation in this property during the parties' marriage as the property was obtained after the parties separated." Wife does not dispute this finding.